UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MAZEN IDO,

         Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

         Defendant.

Case # 1:18-cv-1053-DB

MEMORANDUM DECISION AND ORDER

## INTRODUCTION

Plaintiff Mazen Ido ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 12).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 9, 11. Plaintiff also filed a reply. *See* ECF No. 13. For the reasons set forth below, Plaintiff's motion (ECF No. 9) is **DENIED**, and the Commissioner's motion (ECF No. 11) is **GRANTED**.

## BACKGROUND

On March 5, 2015, Plaintiff protectively filed his DIB application, alleging a disability beginning January 23, 2014 (the disability onset date), based on: back injury, neck injury, left shoulder injury, and chronic migraines causing short-term memory loss and reduced/blurry vision. Transcript (Tr.) 283. Plaintiff alleges a work-related injury in January 2014. Tr. 52, 391-393. He

was 36 years of age on the date last insured (September 30, 2016).[1] Tr. 23, 37. He had a college education and past relevant work experience as an electronics technician, medical shuttle bus driver, and laborer. Tr. 66-67.

Plaintiff's claim was initially denied on April 15, 2015, after which he requested an administrative hearing. Plaintiff appeared and testified at a video hearing held on August 4, 2017. Tr. 22. Administrative Law Judge Elizabeth Ebner (the "ALJ") presided over the hearing from Falls Church, Virginia. *Id*. Plaintiff appeared and testified in Buffalo, New York, and was represented by Carol A. Brent, an attorney. Beth Crain, an impartial vocational expert ("VE") also appeared and testified at the hearing. *Id*. The ALJ issued an unfavorable decision on August 30, 2017, finding Plaintiff not disabled. Tr. 22-39. On August 3, 2018, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## **LEGAL STANDARD**

### I. **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations

---

[1] The record indicates Plaintiff was working in November 2016. Tr. 569. 531.

omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she

cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. 20 C.F.R. § 404.1560(c).

## **ADMINISTRATIVE LAW JUDGE'S FINDINGS**

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her August 30, 2017 decision:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2016;

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of January 23,2014 through his date last insured of September 30, 2016 (20 CFR 404.1571 *et seq*.);

3. Through the date last insured, the claimant had the following severe impairments: Migraine headaches; mild cervical disc bulging and degenerative disc disease with a small C5-6 disc herniation; mild left shoulder impingement; hyperlipidemia; irritable bowel and acid reflux (20 CFR 404.1520(c));

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526);

5. Through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a)).[2] He can lift, carry, push, and/or pull up to ten pounds occasionally and less than ten pounds frequently, and can sit for up to six hours and stand and/or walk for up to two hours in an eight-hour workday. However, after sitting for forty-five minutes he requires the freedom to stand for one to two minutes without going off task or leaving the workstation. He can occasionally reach overhead and frequently reach in all other directions, handle, finger, and operate hand controls. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but can never climb ladders, ropes, or scaffolds or be exposed to unprotected heights or dangerous moving mechanical parts. He can tolerate occasional exposure to vibrations. The claimant can work in moderate noise environments and have occasional exposure to bright lights

---

[2] "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

4

such as is involved in outside work, but he can tolerate lighting in normal office environments. He can perform simple, routine, repetitive tasks not at an assembly line pace involving simple work-related decision making. He would further be off-task no more than 10 percent of an eight-hour workday in addition to normal breaks;

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565);

7. The claimant was born on January 1, 1980 and was 36 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Through the dated last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a));

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 23,2014, the alleged onset date, through September 30, 2016, the date last insured (20 CFR 404.1520(g)).

Tr. at 22-39.

Accordingly, the ALJ determined that, for a period of disability and disability insurance benefits filed on March 5, 2015, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act through September 30, 2016, the last date insured. *Id*. at 39.

## **ANALYSIS**

Plaintiff asserts that the ALJ failed to fully and fairly develop the record, and therefore, the RFC was not supported by substantial evidence. *See* ECF No. 9-1 at 8, 17. The Commissioner argues in response that the ALJ satisfied her duty to develop the record, and substantial evidence supports the ALJ's RFC assessment. *See* ECF No. 11-1 at 9, 15. The Commissioner further argues that it is Plaintiff who failed to meet his burden of demonstrating disability. *Id*. at 9.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

While the ALJ has a duty to develop the record, Plaintiff had the burden of demonstrating functional limitations that precluded any substantial gainful activity. *See* 42 U.S.C. § 423(d)(5)(A), 20 C.F.R. §§ 404.1512(c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say you are disabled. You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say you are disabled.…"), 404.1545(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); SSR 96-4p; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). As the Commissioner noted, because Plaintiff ultimately bears the burden of proving that he is disabled, the ALJ's duty to develop the record is not absolute. *See Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 509 (2d Cir. 2009). "It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Bowen*, 482 U.S. at 146 n.5. Further, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefit claim." *Rosa*, 168 F.3d at 79 n.5. Plaintiff here failed to meet his burden.

Plaintiff argues evidence favorable to his claim was "obviously missing" from the record. ECF No. 9-1 at 9. Plaintiff asserts that reports from chiropractor D. Jordan Conrad., D.C. ("Dr.

Conrad") and chiropractor Dr. Cichocki, and reports from examiners, Dr. Castro and Donald Paarlberg ("Dr. Paarlberg"), were not in evidence. *Id*. at 10 (citing Tr. 324-325; 678-681). A memorandum of law from Plaintiff's workers' compensation attorney references an initial evaluation from Dr. Paarlberg and chiropractic treatment with Dr. Conrad. Tr. 324-325. The State of New York Workers' Compensation Board Panel Decision references chiropractic treatment with Dr. Cichocki, as well as an opinion from Dr. Carr, and a report from Dr. Castro. Tr. 679-680.

Despite being represented by counsel, Plaintiff failed to tender the reports from these providers. In fact, Plaintiff's counsel told the ALJ at the hearing that the record was complete. Tr. 49. It was the ALJ who requested that counsel submit the independent medical examination ("IME") from Dr. Carr and left the record open for counsel to do so. Tr. 64-65, 73-74. Counsel submitted the IME after the hearing, and also submitted the Workers' Compensation Board Panel Decision that mentions the other providers. Plaintiff did not tender these "missing" records[3] to the Appeals Council in connection with his request for review of the ALJ's decision. Tr. 7-8. Nor has he provided them to this Court in support of his appeal. If these records are as important as Plaintiff alleges, he should have submitted them during the administrative process; or at the very least, he should have alerted the ALJ to their existence and requested that the agency assist him in attempting to obtain them.

As stated above, the ALJ noted that an IME performed by Dr. Daniel Carr on October 3, 2014 was not in evidence, and the ALJ left the record open for Plaintiff's counsel to obtain it. Tr. 64-65. Dr. Carr's IME report was thereafter submitted. Tr. 673-677. The ALJ expressed her concern that, despite significant other evidence related to Plaintiff's workers' compensation claim having been submitted, "neither the claimant nor his representative provided this IME report until

---

[3] The Court notes that while there are references to the records of Drs. Paarlberg, Castro, Conrad, and Cichocki, Plaintiff has not presented the actual records.

7

[she] directly requested that they submit it at hearing due to notations in other treatment notes referring to this examination." Tr. 31. As the ALJ noted, Dr. Carr assessed "no clinical correlation" between the radiology imaging, Plaintiff's examination results, and his subjective complaints. Tr. 675. Dr. Carr opined that Plaintiff's subjective complaints were "far out of proportion to objective findings," with a "significant non-organic overlay." *Id*. Dr. Carr found no causally-related injury with respect to Plaintiff's workers' compensation claim and stated he "simply has non-specific myofascial pain complaints with no structural pathology to explain them." *Id*. He opined that Plaintiff was "not working but [was] certainly capable of working," did "not have a disability," and could "return to work without restrictions." *Id*. In sum, Dr. Carr's report was far from favorable for Plaintiff's claim. As the ALJ explained, she gave Dr. Carr's opinions "some weight" to the extent they were supported by the evidence of record, notwithstanding the fact that he examined Plaintiff in connection with his workers' compensation claim. Tr. 36.

With respect to the allegedly missing chiropractic treatment notes, the ALJ noted that although Plaintiff failed to provide any records, he admitted to only attending four sessions. Tr. 30. As for the opinions of Dr. Paarlberg and Dr. Castro, the ALJ explained she gave the opinions "no weight" because all she had was a memorandum drafted for Plaintiff's Workers' Compensation litigation referencing them. Tr. 36-37. Plaintiff argues that "[w]hile it may be proper for the ALJ to reject hearsay reports on the content of these opinions[,] she should have secured actual evaluation records herself." ECF No. 9-1 at 11. However, Plaintiff has not shown that these records actually exist, much less what they contain. Furthermore, his speculation that these records contradicted Dr. Carr's report, or otherwise would have supported his claim is insufficient to show a gap in the record necessary to require remand. Moreover, the ALJ had extensive records regarding Plaintiff's treatment for his work-related injury, including Dr. Carr's report, as well as

8

objective test results. Thus, the record was adequate for the ALJ to make a determination that Plaintiff was not disabled. *See Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996); *see also Jordan v. Comm'r of Soc. Sec.*, 142 F.App'x 542, 543 (2d Cir. Sept. 8, 2005) (no failure to develop the record where claimant's counsel volunteered to obtain the records, the ALJ kept the record open to allow supplementation of the record, counsel stated that there was nothing further to add, and claimant did not request the ALJ's assistance in securing additional evidence).

Plaintiff also argues the ALJ erred by failing to recontact Plaintiff's treating orthopedist Ross Sherban, M.D. ("Dr. Sherban"), "based on [Dr. Sherban's] opinion that Plaintiff was totally disabled, and [by failing] to secure a psychiatric opinion concerning Plaintiff's anxiety and panic disorders." ECF No. 9-1 at 9. Dr. Sherban treated Plaintiff beginning in 2014 and throughout the relevant period. Tr. 329-356; 541-64; 577-92; 593-600. An ALJ "may" recontact a claimant's treating physician if the ALJ decides that the evidence is insufficient to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520b(c)(1), (c)(3). The regulations, however, do not mandate recontacting a treating physician. In this case, Plaintiff has failed to establish that the ALJ had any duty to recontact Dr. Sherban.

The ALJ extensively discussed Dr. Sherban's treatment notes and properly gave "little weight" to his opinion on the administrative issue of disability. Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner."); *Breinin v. Colvin*, No. 5:14-CV-01166 (LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a

physician's opinion."). An ALJ considers medical opinions as to a claimant's level of functioning, but he must ultimately reach an RFC assessment based on the record as a whole. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)

Additionally, as the ALJ explained, Dr. Sherban's opinions were not supported by the objective evidence documenting largely mild neck and shoulder findings and no notable lumbar impairments. Tr. 36. The ALJ noted that although Plaintiff claimed that his neck injury significantly limited his ability to turn his head, use his left arm, sit, and stand, and claimed he could lift only five to ten pounds, "he has pursued limited active treatment," was unwilling to pursue trigger point injections or other therapies for his neck and head pain, and was noncompliant with prescribed treatment and medications. Tr. 34-35. *See, e.g., Shaffer v. Colvin*, No. 14-745, 2015 WL 9307349, at *5 (W.D.N.Y. Dec. 21, 2015) (explaining ALJ properly considered "that plaintiff's treatment for her condition was essentially routine and conservative, consisting of medication management and physical therapy").

The ALJ noted that in September 2016 Plaintiff reported he exercises by walking or running three times per week for one hour. Tr. 25, 531. In November 2016, he reported he was employed at a call center and experienced increased pain while working for 1ong periods on the computer. Tr. 569.The ALJ also noted that the record contained numerous inconsistencies that detracted from Plaintiff's allegations regarding the extent and limiting effect of his symptoms and impairments. Tr. 29. The ALJ noted that MRIs of Plaintiff's shoulder and neck, including a repeat cervical MRI performed in 2017, showed largely mild findings that would not be expected to result in the degree of symptoms alleged by Plaintiff, and the record does not include any findings consistent with Plaintiff's reports of severe and limiting back pain. *Id*. The ALJ also noted that

during Dr. Carr's IME in October 2014, there were "compelling findings demonstrating that Plaintiff was either malingering or exaggerating his degree of limitation." Tr. 35.

Similarly, Plaintiff failed to show that the ALJ had a duty to order a psychological consultative exam. The regulations permit but do not require the agency to purchase a consultative exam for a claimant. *See* 20 C.F.R. § 404.1519a. As previously stated, it is Plaintiff's obligation to provide evidence to establish disability. Here, the evidence from Plaintiff's treating sources was sufficient for the ALJ to determine that his mental impairments were non-severe. While Plaintiff did demonstrate some concentration deficits in 2016, this was related to his migraine headaches, and the ALJ adequately accommodated them in the RFC by limiting Plaintiff to simple, routine, repetitive tasks not at an assembly line pace involving simple work-related decisions and the freedom to be off-task up to ten percent of an eight-hour workday in addition to normal breaks. Tr. 25-26.

The record does not reflect any ongoing mental health treatment or findings to support Plaintiff's reports of anger problems or social anxiety, and his ongoing activities and ability to function in the community detracted from a finding that Plaintiff's symptoms impacted his overall mental functioning. *Id*. The ALJ properly determined that, based on the evidence, Plaintiff had no more than mild limitations in each of the four broad areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. Tr. 26); *see* 20 C.F.R. § 404.1520a(d)(1). Because the record, including the treatment records and Plaintiff's own failure to allege mental impairments as a basis for disability, demonstrated that Plaintiff's mental impairments were nonsevere, the ALJ had sufficient information to determine that Plaintiff was not disabled.

Accordingly, Plaintiff has failed to show that a psychological consultative examination was warranted.

A claimant's RFC is the most that he can still do despite his limitations and is assessed based on an evaluation of the all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. See 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Thus, the task of determining a claimant's RFC and ability to work is within the province of the ALJ, not of doctors. In this case, the ALJ properly and thoroughly considered the relevant evidence in assessing Plaintiff's RFC. *See* 20 C.F.R. § 404.1545(a)(3). While the RFC "'may not perfectly correspond with any of the opinions of medical sources in [the ALJ's] decision, [the ALJ] was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.'" *Dougherty-Noteboom v. Berryhill*, No. 17-00243, 2018 WL 3866671, at *9 (W.D.N.Y. Aug. 15, 2018) (quoting *Matta*, 508 F. App'x at 56).

Here, the ALJ properly weighed all the evidence available and formed Plaintiff's RFC consistent with the record as a whole. The ALJ's RFC for sedentary work reflects that she considered and generously accommodated Plaintiff's mild cervical disc disease with small C5-6 disc herniation, mild left shoulder impingement, his history of migraine headaches, and his subjective allegations of irritable bowel symptoms. Furthermore, Plaintiff's RFC is consistent with the VE testimony that jobs existed in significant numbers in the national economy that a hypothetical individual with Plaintiff's limitations (lift ten pounds occasionally, less than ten pounds frequently; carrying, pushing, pulling the same; and sitting for six hours, and standing or

walking for two hours) could perform. Tr. 69. Moreover, as the ALJ explained, although the clinical evidence of record indicates that Plaintiff can likely perform work with higher exertional demands, limitations for sedentary work more than adequately account for his impairments and subjective symptoms. Tr. 35.

For all these reasons, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole. Therefore, the Court finds no error. The Commissioner's findings of fact must be upheld unless "a reasonable factfinder would have to conclude otherwise." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012). Thus, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE